**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-60786
_____

SIMEON HUGHES,

Petitioner-Appellee,

versus

WALTER BOOKER, et al.,

Respondents-Appellants.

Appeal from the United States District Court
For the Southern District of Mississippi

July 18, 2000

(Opinion February 24, 2000, 5th Cir., 2000 _____F.3d_____)

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The original opinion in this matter was issued by the panel on February 24, 2000. A petition for panel rehearing is currently pending before this panel. The petition for panel rehearing is granted to the extent that we VACATE our previous opinion and replace it with the following opinion. In all other respects, the petition for panel rehearing is DENIED.

Walter Booker, Superintendent of the Mississippi State Penitentiary at Parchman ("the

State"), appeals the district court's decision granting appellee Simeon Hughes's motion for a writ of habeas corpus because he received ineffective assistance of appellate counsel in violation of *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed.2d 493 (1967), and *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed.2d 300 (1988). We affirm.

Hughes was convicted of armed robbery in Mississippi state court and subsequently sentenced as a habitual offender to thirty-four years in prison. On direct appeal to the Mississippi Supreme Court, Hughes's appointed counsel complied with Mississippi's procedure for handling meritless appeals and filed a brief arguing only that:

> Following a review of the transcript and record excerpt [sic]I do not believe that any substained [sic] issue evidencing reversible error exists in the trial of this cause. Nevertheless, the Defendant requests a review of the trial transcript and record excerpt by the Mississippi Supreme court for legal sufficiency of the evidence and for any substantial error committed during the course of the trial. Finally according to Kinningsworth v. State [sic] I have provided the Defendant, Simeon [H]ughes, notice of his right to appeal pro se by certificate of service.

Although Hughes was granted additional time in which to file a *pro se* appellate brief, he declined to do so. The Mississippi Court of Appeals, after declining to conduct an independent review of the record, affirmed Hughes's conviction in an unpublished opinion. Hughes's *pro se* application for state post-conviction relief was denied.

Hughes then filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the district court. As grounds for relief, he alleged that he had been denied his constitutional right to a direct appeal and that he had received ineffective assistance of appellate counsel because his attorney had (1) filed a brief raising no specific issues, and (2) failed to object to a defective indictment. The district court—adopting a modified version of the magistrate judge's recommendation—found that Hughes had been denied effective assistance of counsel and that the

decision of the Mississippi Supreme Court on Hughes's post-conviction motion was an unreasonable application of federal law. Accordingly, the district court ordered that Hughes' habeas petition be granted unless the state afforded him an out-of-time direct appeal with the assistance of competent counsel. The State appealed.

Hughes filed his habeas petition after April 24, 1996, and it is therefore subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S. Ct 2059, 138 L. Ed.2d 481 (1997). Because we agree with the district court that the Mississippi Supreme Court's decision was "on the merits," under AEDPA, we may not grant collateral relief unless the Mississippi Supreme Court's opinion "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d); *see also Williams v. Taylor*, — U.S. —, 120 S. Ct. 1495, 1521, 146 L. Ed. 2d 389 (2000).

I

A criminal defendant has a constitutional right to effective assistance of counsel in his first appeal. *See Evitts v. Lucey*, 469 U.S. 387, 393-95, 105 S. Ct 830, 83 L. Ed.2d 821 (1985). In *Penson v. Ohio*, the Supreme Court distinguished between two types of claims involving denial of assistance of appellate counsel. First, where a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial. *See Penson*, 488 U.S. at 84, 109 S. Ct. 346 (citing *Strickland v. Washington,* 466 U.S. 668, 689-94, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)). Second, where the complained-of performance constituted a complete actual or constructive denial of the assistance of counsel, prejudice is presumed. *See id.*, 488 U.S. at 88-89, 109 S. Ct. at 346 ("[T]he actual or constructive

-3-

denial of the assistance of counsel altogether is legally presumed to result in prejudice.") (citation omitted); *see also Sharp v. Puckett*, 930 F.2d 450, 451-52 (5th Cir. 1991) (same).

In *Anders v. California*, the Supreme Court recognized that counsel could withdraw from representation without denying an appellant fair representation only where certain safeguards were followed. *See Anders*, 386 U.S. at 744, 87 S. Ct. 1396. Specifically, under *Anders,* counsel must conduct a "conscientious examination" of the case before seeking permission to withdraw from a case. *See id.* That request must be accompanied by a brief to the appellate court "referring to anything in the record that might arguably support the appeal." *id.* The appellate court must then conduct a "full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Id.*

Here, Hughes's counsel did not file an *Anders* brief or seek to withdraw from representation. Instead, he complied with Mississippi's procedure for withdrawal of appellate counsel and filed a brief stating that he could find no issue "evidencing reversible error." We agree with the district court that this was the functional equivalent of withdrawing from representation without complying with the requirements of *Anders. See Lofton v. Whitley*, 905 F.2d 885, 888 (5th Cir. 1990) ("Lofton may have been formally represented by counsel, but the failure to raise any grounds for appeal was the equivalent of his attorney's withdrawal."); *see also Lombard v. Lynaugh,* 868 F.2d 1475, 1480 (5th Cir. 1989) (finding constructive denial of counsel where attorney "did nothing to attempt to aid Lombard's appeal beyond the initial perfecting of the appeal itself.").

In *Penson,* the Court considered the consequences of an attorney's withdrawal from representation without filing a sufficient brief as required by *Anders.* In that case, the Court determined that such actions amounted to a constructive denial of appellate representation. More recently, however, the Supreme Court clarified that states are free to adopt procedures for withdrawal

of counsel that differ from those set out in *Anders*, as long as those procedures adequately safeguard a defendant's right to appellate counsel. *See Smith v. Robbins*, — U.S.— , 120 S. Ct. 746, 759, — L.Ed. 2d — (2000). Under the principles set out in *Robbins*, Hughes was not constructively denied appellate representation simply because his attorney followed a procedure that differed from *Anders*. Instead, if Hughes's counsel followed a procedure that "afford[ed] adequate and effective appellate review to indigent defendants" and therefore "reasonably ensure[d] that an indigent's appeal [would] be resolved in a way that [was] related to the merit of that appeal," *Robbins*, — U.S.—, 120 S. Ct. at 758, he was not constructively denied appellate counsel. In contrast, if counsel followed a procedure that does not meet this standard, then the defendant was constructively denied counsel, and prejudice should be presumed.

Here, the State argues that while Mississippi's procedure for withdrawal of counsel differs from the one set out in *Anders*, it adequately protects a defendant's right to appellate representation. Since Hughes's attorney complied with this procedure, the State reasons, the district court erred in presuming prejudice. Mississippi's procedure derives from *Killingsworth v. State,* 490 So.2d 849 (Miss. 1986), where the Supreme Court of Mississippi held:

> If counsel truly believes an appeal without merit, he may with honor state such to the Court—although we caution that this may be done only in the clearest cases. Where counsel regards the appeal without merit and deems it his obligation to so state to the Court, the full protection of the rights of the accused require that he receive a copy of the representation counsel has made to the Court and be furnished a reasonable opportunity to file his own comments and raise any additional points that he chooses.

*Id.* at 851. Our review of *Robbins*, as well as *Anders* and its progeny, leads us to conclude that this procedure (the "*Killingsworth* procedure") fails to "adequately safeguard a defendant's right to appellate counsel." *Robbins*, — U.S. —, 120 S. Ct. at 759.

While the Supreme Court has never set out a specific test for determining the adequacy of a state's procedure, it has clearly recognized that the existence of certain safeguards make a withdrawal procedure sufficient to protect a defendant's ri ght to appellate counsel. In *Robbins,* the Court determined that California's procedure (the "*Wende* procedure) was superior to withdrawal procedures that it had found inadequate in the past in at least four respects. First, the California procedure required appellate counsel to make an explicit finding that the appeal was frivolous. *See Robbins,* — U.S. —, 120 S. Ct. at 761.[1] Second, the *Wende* procedure protected a defendant's right to have counsel until a case is determined to be frivolous because under the procedure, counsel did not move to withdraw, and the court ordered briefing upon a finding that arguable issues existed. *See id.* Third, the *Wende* procedure required counsel to file more than a "one-paragraph 'bare conclusion'" that appellant's arguments were without merit. *See id.*, — U.S. —, 120 S. Ct. at 762. Instead, "[c]ounsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case." *Id.* Finally, the *Wende* procedure provided for "at least two tiers of review." *Id.*[2]

---

[1] In contrast, under the procedure at issue in *Anders*, counsel did not need to determine that an appeal would be "frivolous," but rather that the defendant was "unlikely to prevail on appeal." *Robbins*, — U.S. —, 120 S. Ct. at 761(citing *Anders*).

[2] The Court further noted that "[i]n addition to this double review and determination of frivolity, California affords a third layer of review, through the California Appellate Projects," under which, if court-appointed counsel can find no meritorious issues and chooses to file a Wende brief, an appellate project staff attorneys review the record again to determine the propriety of filing a Wende brief. *See Robbins*, 120 S. Ct. at 753, n. 1. "Thus, by the time the Wende brief is filed in the court of appeals, the record in the case has been reviewed by both the court-appointed counsel (who is presumably well qualified to handle the case) and by an experienced attorney on the staff of [the appellate project]." *Id.*

In contrast, the procedures rejected in *Eskridge v. Washington St. Bd. of Prison Terms*

*Anders* also set out certain requirements that safeguarded the right to appellate counsel. Specifically, under the procedure established in *Anders*, appellate counsel accompanied his request to withdraw with "a brief referring to anything in the record that might arguably support the appeal," which would "induce the court to pursue all the more vigorously its own review." *Anders*, 386 U.S. at 744, 87 S. Ct. 1396.

The *Killingsworth* procedure affords a defendant few of these safeguards. As set out above, in the "clearest of cases" where counsel believes that no meritorious appellate issues exist, he must simply "so state to the Court," and inform his client of his actions. *See Killingsworth*, 490 So. 2d at 851. Counsel is not required to explain to the court the basis of his determination, and no further briefing of arguably meritorious issues is required. *See Anders*, 386 U.S. at 743, 87 S. Ct. 1396 (noting the dual purpose of requiring counsel to brief arguably meritorious appellate issues: "This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel.").

Perhaps most significantly, under the *Killingsworth* procedure, an indigent defendant is guaranteed only one "tier" of review. Specifically, *Killingsworth* guarantees review by counsel, but not review by the state court. Both the Supreme Court and this court have previously recognized the importance of an independent review of the record by the state appellate court. *See Robbins*, — U.S. —, 120 S. Ct. at 752 (recognizing that under the *Wende* procedure, "[t]he appellate court, upon

---

*and Paroles*, 357 U.S. 214, 78 S. Ct. 1061, 2 L. Ed. 2d 1269 (1958), and *Lane v. Brown*, 372 U.S. 477, 83 S. Ct. 768, 9 L. Ed. 2d 892 (1963) provided for only level of review by either counsel (*Lane*) or the court (*Eskridge*).

receiving a 'Wende brief,' must 'conduct a review of the entire record,' regardless of whether the defendant has filed a pro se brief") (citation omitted); *Penson,* 488 U.S. at 82-83, 109 S. Ct. 346 ("Moreover, the Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound."); *Anders*, 386 U.S. at 744, 87 S. Ct. 1396 ("A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."); *Lofton v. Whitley*, 905 F.2d 885, 888 (5th Cir. 1990) ("In addition, it was very important in *Lombard*, *Penson* and *Anders* that the state court of review independently examined the record for errors."); *see also Eskridge*, 357 U.S. at 216, 78 S. Ct. 1061 (holding that one level of review—by the trial judge only—"cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript").[3] Indeed, neither the Supreme Court nor this court has approved of a procedure for withdrawal of counsel that affords an indigent defendant only one level of review of the record for potentially meritorious appellate issues.

Nor does the *Killingsworth* procedure offer any additional safeguards that might guarantee an indigent defendant adequate appellate review despite the shortcomings set out above. While *Killingsworth* itself purports to "require[] more than *Anders*," *see Killingsworth*, 490 So.2d at 852, in many cases it requires far less. More specifically, in cases where counsel "truly believes an appeal

---

[3]     On appeal, the State summarily notes that "[t]he Mississippi appellate process, likewise, provides for two tiers of review." This argument misses the import of the Court's statement in *Robbins*. That a state's appellate process allows for several appeal is irrelevant. Of relevance to a denial of appellate counsel argument is whether an indigent defendant's case is reviewed for potentially meritorious issues by both counsel and a state court. Under the *Killingsworth* procedure, a court is not required to review the record, and counsel is not required file a brief that indicates that he scoured the record thoroughly.

without merit," counsel is required to do virtually nothing other than file a "no-merits" brief and inform the defendant of his actions. *Id.* at 851. While *Killingsworth* does caution counsel that such findings should be infrequently made in only the "clearest of cases," the court sets no standards and places no explicit restrictions on counsel's ability to render such a blanket conclusion. *See id.* Overall, the *Killingsworth* procedure fails to erect sufficient safeguards to protect a defendant's right to appellate counsel.

In addition to arguing that the *Killingsworth* procedure "imposes a greater standard than that established in *Anders*," the State argues that Hughes's attorney afforded adequate representation by taking steps that essentially complied with the procedure approved in *Robbins.* More specifically, the State points out that Hughes's attorney both briefed the facts of the case and requested "a review of the trial transcript and record excerpt by the Mississippi Supreme Court for legal sufficiency of the evidence and for any substantial error committed during the course of the trial." This argument is unavailing because it is clear from the record that here, the state appellate court was not required by law to conduct an independent review of the record, and that it in fact chose not do so. In affirming Hughes's conviction, the Mississippi Court of Appeals held:

> On appeal, Hughes does not raise any specific issue before this Court. Hughes states that he can find no specific instance of reversible error in this cause. . . . This Court will not assume the burden of briefing any issue which the Appellant, aided by counsel, cannot find or claim as error. The brief filed on behalf of Hughes contains neither argument nor support authorities. Accordingly, Hughes cannot overcome the presumption of correctness accorded to the trial court's judgment.

In sum, while we agree with the State that Hughes's appellate counsel complied with Mississippi's procedure for withdrawal of counsel in frivolous appeals, we find that that procedure fails to "afford adequate and effective appellate review to indigent defendants" in that it does not

"reasonably ensure that an indigent's appeal will be resolved in a way that is related to the merit of that appeal," *Robbins*, 120 S. Ct. at 758. Accordingly, Hughes was constructively denied appellate counsel, and the district court properly presumed prejudice.

II

The State contends that Hughes should nonetheless be denied relief because the only specific appellate issue that he raises—that his indictment was defective because it did not conclude with the phrase "against the peace and dignity of the state"—is without merit. Our previous cases applying *Penson* have indeed emphasized either that there were non-frivolous issues for direct appeal, *see Lombard*, 868 F.2d at 1484 ("[F]or it is in any even clear that if, as here, there are one or more indisputably nonfrivolous issues for appeal, counsel must do more than simply file a wholly conclusory 'no merit' brief . . . ."); *Lofton,* 905 F.2d at 890 ("Our review of the record without the benefit of counsel reveal at least one issue that may have not been frivolous, even if Lofton might have lost an appeal"), or that the court could not determine whether nonfrivolous issues existed, *cf. Lofton*, 905 F.2d at 890 ("Because we cannot determine that there would have been no nonfrivolous grounds for appeal, and because Lofton's appellate counsel asserted no grounds for appeal yet failed to follow the Anders procedures, we hold that Lofton is entitled to relief."). In *Lombard*, we expressly left open the question of whether there "would be any entitlement to [habeas] relief if there had been no nonfrivolous appellate issue or, assuming arguendo that the inquiries differ, if we could and did determine beyond a reasonable doubt that the conviction would have been affirmed on direct appeal had there been fully effective appellate counsel. *Lombard,* 868 F.2d at 1484.

Here, the district court found that, at the time that Hughes filed his appellate brief, at least one nonfrivolous issue—the form of Hughes's indictment—existed. While we agree with the district

-10-

court that this issue was of arguable merit at the time of his appeal, we also agree with the State that, in light of intervening case law, this is no longer a valid argument.[4]  Nonetheless, we hold that the district court was correct in granting Hughes habeas relief.  In presenting its argument, the State essentially asks us to conduct a harmless error or prejudice analysis.  This ignores the clear import of *Penson*: once we determine that a defendant has been constructively denied appellate counsel— as we have here—"any discussion even flirting with the language of Strickland's prejudice or harmless error analysis is unnecessary."  *Lombard*, 868 F.2d at 1487 (Goldberg, J., specially concurring); *see also Penson*, 488 U.S. at 88, 109 S. Ct. 346 ("It is therefore inappropriate to apply either the prejudice requirement of Strickland or the harmless-error analysis of Chapman.").[5]

More significantly, as the district court correctly noted, the Mississippi Court of Appeals did not examine the record to determine if any nonfrivolous appellate issues existed.  Nor did the district court make such a determination.  It is not the role of this court to scour the record —unassisted by an *Anders* brief, any explanation of why the appeal is frivolous by appellate counsel, or a state court ruling—in an effort to identify nonfrivolous appellate issues.  The essence of Hughes' constitutional deprivation was that he was denied the effective assistance of an appellate advocate; our independent review of the record cannot remedy this denial.  *Cf. Lofton,* 905 F.2d at 888 ("[W]hen a court had

---

[4]    Hughes's indictment, which both mentioned and expressly incorporated a "habitual offender" exhibit, concluded with the term "against the peace and dignity of The State of Mississippi." This satisfies the requirement of §169 of the Mississippi Constitution. *See Earl v. State,* 672 So.2d 1240, 1244 (Miss. 1996) (finding that indictment charging defendant with "the habitual offender allegations as set forth in the attachment hereto" satisfied § 169 as long as it concluded with the required term).  Accordingly, at least following *Earl*, the defective-indictment issue is frivolous.

[5]    The State additionally argues that Hughes waived his right to raise the defective indictment issue on direct appeal and  that the issue would be pro cedurally barred if raised on a subsequent direct appeal.  This claim is irrelevant in light of our finding that Hughes was constructively denied appellate representation.

to consider the record without the advice of counsel, reversal was mandated.").

Accordingly, we find that the district court was correct in holding that the Mississippi Supreme Court's decision was based upon an unreasonable application of *Penson*. The judgment of the district court is therefore AFFIRMED.